# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**LESLIE SMITH**,

    Plaintiff,

    vs.                                      No. 08CV105 MCA/LCS

**STATE FARM INSURANCE COMPANIES d/b/a**
**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's *Motion for Summary Judgment* [Doc. 6], filed February 13, 2008; *Plaintiff's Motion for Continuance* [Doc. 10], filed February 25, 2008; *Plaintiff's Motion for Leave to File Surreply* [Doc. 17], filed March 7, 2008; and *Plaintiff's Motion for Declaratory Judgment* [Doc. 26], filed May 16, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court defers a ruling on Defendant's summary-judgment motion; grants Plaintiff's motion for continuance; denies as moot Plaintiff's motion for leave to file a surreply; and defers a ruling on Plaintiff's declaratory-judgment motion.

## I. BACKGROUND

The following facts are taken from the complaint or the summary-judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff Leslie Smith.

On or about April 20, 2003, Ms. Smith was a passenger in a Jeep being driven by John Riley. Ms. Smith and Mr. Riley were headed westbound on State Road 404 in Dona Ana County, New Mexico, when a vehicle operated by Crystal Rhodes made an unexpected U-turn in front of them. Mr. Riley's Jeep "T-boned" Ms. Rhodes' vehicle and Ms. Smith was injured as a result.

A *New Mexico State Police* report prepared after the accident lists Martha Rhodes as the owner of the vehicle that Crystal Rhodes was driving at the time of the collision. Martha and Danny Rhodes are Crystal Rhodes' parents. The report also shows that, at the time of the accident, the Rhodes vehicle was insured under a policy issued by Farmers Insurance Group. [Doc. 9; Exh. H at 1].

At the time of the accident, Ms. Smith was insured under three policies that her father, Larry Smith, carried with Defendant State Farm Insurance. Each policy provided uninsured/underinsured motorist coverage (hereinafter "Coverage U") limits of $50,000 per accident, for a total stacked limit of $150,000. [Doc. 7 at 1-2]. With respect to Coverage U, the State Farm policies read:

> SECTION III - UNINSURED AND UNKNOWN MOTORIST - COVERAGE U
>
> When Coverage U Does Not Apply
>
> THERE IS NO COVERAGE:
>
> 1. FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY OR PROPERTY

>  DAMAGE. . . ."

[Doc. 7; Exh. G].

On September 23, 2005, Ms. Smith signed a document captioned *Release in Full of all Claims and Rights* ("the Release"), providing, in pertinent part, as follows:

> For and in consideration of the sum of TWENTY-FIVE THOUSAND DOLLARS & ZERO CENTS ($25,000.00) receipt of which is acknowledged, I release and forever discharge Danny Rhodes, Crystal Rhodes and the insurer, their principals, agents, and representatives from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to personal injuries, death or property damage, arising from an accident that occurred on or about the 20th day of April, 2003 at or near Dona Ana, New Mexico.

[Doc. 7; Exh. F].

In a letter dated December 16, 2005 and addressed to "Sir/Madam" at Defendant's Tempe, Arizona office, counsel for Ms. Smith "serve[d] notice that [Ms. Smith would] pursue a claim under the Medical Pay and Underinsured Motorist provisions of her household policies." [Doc. 7; Exh. B, Dec. 16, 2005 letter from Robert L. Lovett at 2]. Counsel also explained that Ms. Smith's case "was originally handled with the tort feasors [sic] carrier, Farmers Ins Group[,]" but because an assets check revealed no assets, counsel and Ms. Smith had "moved ahead to settle the case." [Id.; Exh. B, Lovett letter at 1]. Counsel did not attach a copy of the Release to this letter.

On February 8, 2006, counsel's Case Manager, Albert Munoz, forwarded to Mike Woodruff of Defendant's Tempe office, a memorandum prepared by Jim Laws following Mr.

3

Laws' asset check on the Rhodes family. [Doc. 7; Exh. D, Memorandum from Jim Laws to Rob Lovett]. Mr. Laws' check revealed no real property assets in the name of Crystal Rhodes or her husband. [Id.]. With respect to Martha and Danny Rhodes, Mr. Laws discovered that:

(1) Martha and Danny Rhodes owned a piece of property in Chaparral, New Mexico, which was assessed at $111,307 with a mortgage in the principal amount of $96,815;

(2) Martha and Danny Rhodes owned a second piece of property in Chaparral, which was assessed at $43,501 with a mortgage in the principal amount of $58,547;

(3) Danny Rhodes' income for 2004 was approximately $77,000 and for 2003 was approximately $70,000; and

(4) a records search revealed no earnings for Martha Rhodes for the two years prior to the asset check.

[Id.].

On March 22, 2006, Mr. Munoz forwarded to Mr. Woodruff a copy of the Release. By letter dated July 11, 2006, Jake Bourguet, a Team Manager in Defendant's Albuquerque office, wrote to counsel for Ms. Smith, explaining that Defendant was unable to extend Coverage U benefits to Ms. Smith because she had violated the terms of her policy by settling her claim without Defendant's consent. [See Doc. 7; Exh. G, July 11, 2006 letter from Jake Bourguet to Robert Lovett].

On December 14, 2007, Ms. Smith filed her state-court *Complaint for Damages and Personal Injury*, which Defendant timely removed to this Court. [See Doc. 1]. Defendant thereafter moved for summary judgment on the ground that Ms. Smith breached the Coverage U provision of her policy by settling with Crystal and Danny Rhodes without Defendant's written consent, thereby destroying its subrogation rights. [See generally Docs. 6 and 7]. Among other things, Defendant contends that, if it were unable to collect upon a judgment against Crystal Rhodes, it would have pursued a claim against her father, Danny Rhodes, under the family purpose doctrine. [Id. at 7]. In response, Ms. Smith does not dispute that she settled her claim and released Danny and Crystal Rhodes without first obtaining Defendant's consent; however, she maintains that Defendant has not demonstrated a resulting substantial prejudicial, such that it is now relieved from paying underinsured motorist/Coverage U benefits. [Doc. 9 at 2-4]. At the same time she filed her summary-judgment response, Ms. Smith also filed *Plaintiff's Motion for Continuance*, seeking more time to take depositions of the Rhodes family regarding their assets, and also to determine the applicability of the family purpose doctrine to the case. [See generally Doc. 10]. Ms. Smith subsequently filed a motion for declaratory judgment, seeking a declaration that, notwithstanding her alleged breach, Defendant is obligated to provide her with Coverage U benefits. [See generally Doc. 26].

5

## II. ANALYSIS

### A. Standard of Review: Fed.R.Civ.P. 56

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).

However, "[s]ummary judgment should not be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" <u>Comm. for First Amendment v. Campbell</u>, 962 F.2d 1517, 1521 (10th Cir. 1992) (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n. 5 (1986)).  For that reason, Fed.R.Civ.P. 56(f) allows a nonmovant to seek deferral of a summary-judgment ruling pending discovery, providing, in pertinent part, that "[i]f a party opposing the [summary-judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken. . . ." Fed.R.Civ.P. 56(f).

Although "[t]he central tenet of Rule 56(f) is that summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition . . . Rule 56(f) relief is not automatic." <u>Burke v. Utah Transit Auth. and Local 382</u>, 462 F.3d 1253, 1264 (10th Cir. 2006) (internal citations omitted). Rather, the Tenth Circuit has summarized the requirements for Rule 56(f) as follows:

> A prerequisite to granting relief [pursuant to Rule 56(f) ] . . . is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts. In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

> ... [C]ounsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver.

Price ex rel. Price v. Western Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000) (*quoting* Campbell, 962 F.2d at 1522). Finally, "[u]nless dilatory or lacking in merit, the [Rule 56(f)] motion should be liberally treated." Campbell, 962 F.2d at 1522 (*quoting* James W. Moore & Jeremy C. Wicker, MOORE'S FEDERAL PRACTICE ¶ 56.24 (1988)).

### B. Defendant's *Motion for Summary Judgment* [Doc. 6] and *Plaintiff's Motion for Declaratory Judgment* [Doc. 26]

Defendant's motion for summary judgment is grounded upon its contention that "[t]he undisputed facts establish that [Ms. Smith] is precluded from recovering underinsured motorist benefits because she breached the consent to settle provisions of her insurance policies by settling with the tortfeasor and her father without obtaining the written consent of [Defendant]." [Doc. 6 at 1].

The purpose of underinsured motorist benefits is "to protect the insured against financially irresponsible motorists. . . ." State Farm Mut. Auto Ins. Co. v. Fennema, 110 P.3d 491, 495 (N.M. 2005). By the same token, an insurer who pays such benefits is entitled to attempt to hold a financially irresponsible motorist accountable for his injury-causing conduct by pursuing and enforcing its subrogation rights. Id. A consent-to-settle provision, such as the one Ms. Smith is alleged to have breached here, lets the insurer determine how best to protect its subrogation rights by allowing it to

> investigat[e] the merits of the liability case against the tortfeasor, the extent of damages suffered by its insured, the

> estimated expense of litigating against the tortfeasor and whether the tortfeasor has sufficient assets to give the insurer a realistic possibility of collecting a judgment against the tortfeasor. If the insurer elects to withhold consent to settle, it may tender the amount of the tortfeasor's liability coverage that was offered to its insured. This allows the insurer to preserve its subrogated interest while placing its insured in the same position he or she would have been in, had the insured been authorized to settle with the tortfeasor.

Id. at 494 (internal citation omitted).

For more than 40 years, it has been "well established that if an insured, without the knowledge of his insurer, effectively releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, he destroys any right of subrogation the insurer may have against the wrongdoer. . . ." Armijo v. Foundation Reserve Ins. Co., 408 P.2d 750, 752 (N.M. 1965). The New Mexico Supreme Court subsequently and specifically applied this principle to claims involving underinsured motorist benefits. See March v. Mountain States Mut. Cas. Co., 687 P.2d 1040, 1044 (1984) (upholding consent-to-settle provision in underinsured motorist policy, concluding that insured's breach of provision precluded insured from collecting benefits).

Still, because it would frustrate the purpose of underinsured motorist benefits to deny coverage when the insured's breach of a consent-to-settle provision "has no *real* effect on the insurer's ability to recover from an insolvent tortfeasor through subrogation[,]" New Mexico courts require the insurer to demonstrate that it has been substantially prejudiced by the breach before it will be relieved of its contractual obligations. Fennema, 110 P.3d at 493 (emphasis added). Although a presumption of substantial prejudice arises upon proof of the

insured's breach of a consent-to-settle provision, this presumption is a rebuttable one. Id. at 493, 495.

Fennema involved facts similar to those of the instant case, inasmuch as Russell Fennema, a State Farm insured, breached the consent-to-settle provision of his policy when, without State Farm's written consent, he settled his claim with—and released from further liability—the negligent driver who struck the rear of Fennema's vehicle. Fennema, 110 P.3d at 492-493. Fennema's attempt to rebut the presumption of substantial prejudice, however, fell short where the evidence he presented showed only that the tortfeasor was a graduate student in the University of New Mexico Department of Psychology. Id. at 495. Reminding that judgments in New Mexico are valid and enforceable for 14 years, the New Mexico Supreme Court affirmed entry of summary judgment for State Farm, explaining that Fennema's evidence, without more, "[did] not as a matter of law, meet or rebut the presumption of substantial prejudice [because] State Farm [might] have had a realistic possibility of recovering from the tortfeasor, who, as a graduate student in psychology, was likely to be gainfully employed in the near future." Id.

In this case, Ms. Smith and Defendant both cite and rely on Fennema for competing propositions—(1) that Ms. Smith has rebutted the presumption of substantial prejudice by demonstrating through Mr. Laws' asset check on the Rhodes family that Crystal Rhodes has no assets subject to subrogation (Ms. Smith's position), and (2) that Ms. Smith has failed to rebut Defendant's showing that it has been substantially prejudiced as a result of Ms. Smith's having released asset-holder Danny Rhodes, whom Defendant was prepared to pursue under

the family purpose doctrine (Defendant's position). [See Doc. 7 at 7; Doc. 8 at 2-3].

"[T]he family purpose doctrine imposes liability on the head of a household for the negligent operation of a vehicle by a member of the household to whom the head of household has furnished the vehicle." Hermosillo v. Leadingham, 13 P.3d 79, 84 (N.M.App. 2000). The doctrine, originally a creature of agency law, today is recognized as existing to promote the public policy of "requir[ing] a responsible person to answer for damages caused by the family car." Madrid v. Shryock, 745 P.2d 375, 377 (N.M. 1987) (explaining that this policy statement reflects "a more accurate justification of family purpose decisions [than] the [agency-based] legal fiction that the automobile owner makes the pleasure and convenience of his family his business when he provides a vehicle for the use of his family.").

The elements of the family purpose doctrine are set forth in the following New Mexico Uniform Jury Instruction:

> If you find that the motor vehicle operated by _____ (driver) [was made available by _____ (head of household) to _____ (driver) for any purpose on this occasion] [or] [was furnished by _____ (head of household) to family members of the household, including _____ (driver), for general use] [and that _____ (driver) was a family member of _____ (head of household) household], then _____ (head of household) is liable for damages proximately caused by negligent operation of the vehicle by _____ (driver).

N.M. STAT. ANN. UJI 13-1210 (2007) ("the UJI"). Citing this UJI, Team Manager Jake Bourguet stated in his affidavit that

> [a]s the father of Crystal Rhodes, Danny Rhodes would have been liable on a subrogation claim for underinsured benefits to State Farm under the Family Purpose Doctrine [and that b]ased on the information in the assets check,[1] State Farm had a realistic potential to collect on a judgment in a subrogation action against Danny Rhodes for any amounts State Farm would potentially have paid on an underinsured motorist claim.

[Doc. 7; Exh. A, Affidavit of Jake Bourguet at 3].

Defendant's argument *presumes* the applicability of the family purpose doctrine when there is no record evidence tending to show that this is or is not the case.  As Defendant correctly points out, Ms. Smith

> has submitted no sworn testimony or admissible evidence to dispute the sworn affidavit testimony by . . . Jake Bourguet that Danny Rhodes would have been liable on a subrogation claim under the Family Purpose Doctrine . . . or that State Farm had a realistic potential to collect on a judgment against Mr. Rhodes in a subrogation action.

[Doc. 12 at 2-3].  However, it is equally true that Defendant removed this action to this Court on January 28, 2008, and filed its summary-judgment motion on February 13, 2008. [See Docs. 1, 6].  At least one circuit court has noted that "[w]here . . . a summary judgment motion is filed . . . before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely."  Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003) (district court should have granted

---

[1] It bears noting that Mr. Laws' undated Memorandum summarizing his asset check was forwarded to Defendant on February 8, 2006. [See Doc. 7; Exh. C, Feb. 8, 2006 letter from Albert Munoz to Mike Woodruff, attached Memorandum].  It is possible that the Rhodes family's financial situation is different today from what it was in early 2006.

nonmovant's motion for continuance where (1) summary-judgment motion filed less than one month after suit filed; (2) documentation that was dispositive of pivotal question might have existed; and (3) no discovery whatsoever had yet taken place).

Whether the family purpose doctrine even applies in this case may be dispositive of whether Ms. Smith's alleged breach of the Coverage U provision resulted in substantial prejudice to Defendant. On the one hand, if the family purpose doctrine applies but Crystal Rhodes is deemed asset-free and judgment-proof, Ms. Smith's actions may have destroyed Defendant's chance to bring a subrogation action against asset-holder Danny Rhodes for any Coverage U benefits Defendant might have paid.[2] On the other hand, if the family purpose doctrine does *not* apply and Crystal Rhodes is deemed asset-free and judgment-proof, it is difficult to see how Defendant would be able to claim substantial prejudice from fulfilling its contractual obligation to Ms. Smith, notwithstanding that it would not later be able to subrogate. After all, "it would be inconsistent with the purpose of the underinsured motorist statute to deny an insured indemnification when the insured's breach of a consent-to-settle provision has no real effect on the insurer's ability to recover from an insolvent tortfeasor through subrogation." Fennema, 110 P.3d at 494 (*citing* Sorensen v. Farmers Ins. Exch., 927 P.2d 1002, 1005 (Mont. 1996) (explaining that "[t]he purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tortfeasor

---

[2] Crystal Rhodes' mother, Martha Rhodes, was not named in the Release. [See Doc. 7; Exh. F, "Release in Full of All Claims and Rights"]. Yet Martha Rhodes is listed as the owner of the vehicle that Crystal Rhodes was driving when she and the vehicle in which Ms. Smith was a passenger collided. [Doc. 9; Exh. H]. It is not inconceivable that Defendant might pursue a subrogation claim against Martha Rhodes under the family purpose doctrine.

13

does not provide adequate indemnification" and noting that "[d]enying accident victims indemnification based upon their action which can have no effect on the insurer's ability to subrogate will not further the purpose of underinsured motorist coverage.")).

Accordingly, because (1) Defendant filed its summary-judgment motion within three weeks after removing the action to this Court; (2) no meaningful discovery has yet taken place; and (3) information gleaned during discovery may be dispositive of such pivotal questions as the applicability of the family purpose doctrine, see Burlington Northern Santa Fe R. 323 F.3d at 773, the Court will defer ruling on Defendant's *Motion for Summary Judgment* so that Ms. Smith may have an opportunity, pursuant to Fed.R.Civ.P. 56(f), to depose Crystal Rhodes, Danny Rhodes, and Martha Rhodes both to determine the applicability of the family purpose doctrine and to gauge and assess the current financial situation of the Rhodes family.[3]

For the same reasons the Court defers a ruling on Defendant's summary-judgment motion, the Court also defers a ruling on Ms. Smith's declaratory-judgment motion, as the requested declaration would require the Court to determine that Defendant was not substantially prejudiced by Ms. Smith's alleged breach of the consent-to-settle provision and that the family purpose doctrine does not apply. [See generally Doc. 26].

---

[3] See *supra* note 1.

### C. *Plaintiff's Motion for Continuance* [Doc. 10]; *Plaintiff's Supplemental Reply to Defendant's Motion for Summary Judgment* [Doc. 15]; and *Plaintiff's Motion for Leave to File Surreply* [Doc. 17]

As a final matter, the Court addresses *Plaintiff's Motion for Continuance* [Doc. 10], *Plaintiff's Supplemental Reply to Defendant's Motion for Summary Judgment* [Doc. 15], and *Plaintiff's Motion for Leave to File Surreply* [Doc. 17].

As previously explained, Rule 56(f) allows the Court to, among other things, "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken. . . ." Fed.R.Civ.P. 56(f). Moreover, "[t]he protection afforded by Rule 56(f) is an *alternative* to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986) (emphasis in original). In this case, however, counsel filed both a summary-judgment response and a motion for Rule 56(f) continuance, [see Docs. 8, 10], although the motion for continuance did not include an affidavit showing why facts precluding summary judgment could not be presented. See Campbell, 962 F.2d at 1522. Instead, the affidavit, which explains that further discovery is needed to investigate the Rhodes family finances and determine the applicability of the family purpose doctrine, was filed as an exhibit to *Plaintiff's Supplemental Reply to Defendant's Motion for Summary Judgment* [Doc. 15; Exh. I, Affidavit of Robert L. Lovett], and then only after Defendant, in its response to the motion for continuance, pointed out that the necessary affidavit had not been filed. [See Doc. 14 at 2].

Rather than comply with the Local Rule that explicitly states that "[t]he filing of a surreply requires leave of the Court[,]"[4] counsel for Ms. Smith chose to file first and seek leave later, as evidenced by *Plaintiff's Motion for Leave to File Surreply*, which was filed on March 7, 2008. While this motion explained that a surreply was necessary for the purpose of "provid[ing] a supporting affidavit only[,]" [see Doc. 17 at 1], the supporting affidavit had been filed three days earlier (without leave of court), on March 4, 2008. [See Doc. 15; Exh. I, Lovett affidavit].

In any case, it does not appear that a surreply was the correct vehicle by which to cause counsel's supporting affidavit to be made a part of the record, as "[t]he standard for granting a leave to file a surreply is whether the party making the motion would be unable to contest matters *presented to the court for the first time in the opposing party's reply*." Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001) (emphasis added). That is not the situation here, where counsel concedes, at least with respect to the issue of the applicability of the family purpose doctrine, that the doctrine was asserted in the summary-judgment motion itself. [See Doc. 15; Exh. I, Lovett affidavit].

Accordingly, because *Plaintiff's Motion for Leave to File Surreply* does not comply with the applicable Local Rule, it will be denied. Still, to reject counsel's affidavit outright would prevent the Court from granting Ms. Smith's motion for continuance, which the Court concludes is a well-taken motion. In other words, to disregard the affidavit would effectively

---

[4] The Local Rules were revised, effective September 9, 2008. While there was no substantive change, it is now Rule 7.4(b)—rather than Rule 7.6(b)—that addresses the filing of a surreply. See D.N.M.LR-Civ. 7.4(b).

(and unfairly) punish Ms. Smith for her attorney's missteps, which this Court declines to do. See In re Hill, 775 F.2d 1385, 1387 (9th Cir. 1985) (cautioning that sanctions for non-jurisdictional, procedural defaults and deficiencies in the management of litigation, where the client will bear the brunt of the attorney's errors, must be proportionate to actual fault).[5]  Thus, although the Court denies *Plaintiff's Motion for Leave to File Surreply*, the Court accepts counsel's supporting affidavit as if it had been properly filed along with *Plaintiff's Motion for Continuance*, which will be granted.

## III. CONCLUSION

For the reasons set forth more fully above, the Court will defer a ruling on Defendant's *Motion for Summary Judgment* [Doc. 6], and *Plaintiff's Motion for Declaratory Judgment*. [Doc. 26]. The Court will grant *Plaintiff's Motion for Continuance* [Doc. 10], so that Ms. Smith may have an opportunity, pursuant to Fed.R.Civ.P. 56(f), to depose Crystal Rhodes, Danny Rhodes, and Martha Rhodes both to determine the applicability of the family purpose doctrine and to gauge and assess the current financial situation of the Rhodes family. Finally, the Court denies as moot *Plaintiff's Motion for Leave to File Surreply* [Doc. 17].

**IT IS, THEREFORE, ORDERED** that the Court defers its ruling on Defendant's *Motion for Summary Judgment* [Doc. 6];

---

[5] Additionally, the Tenth Circuit has expressed a clear preference for resolving cases on their merits.  See, e.g., Rogers v. Andrus Transp. Servs., 502 F.3d 1147, 1152 (10th Cir. 2007) ("Dismissal is warranted when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.").

**IT IS FURTHER ORDERED** that the Court defers its ruling on *Plaintiff's Motion for Declaratory Judgment* [Doc. 26];

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Continuance* [Doc. 10] is **GRANTED**;

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Leave to File Surreply* [Doc. 17] is **DENIED as MOOT**.

**SO ORDERED** this 24th day of September, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge